RANDOLPH, Circuit Judge,
with whom Circuit Judges SENTELLE, HENDERSON and KAVANAUGH join, dissenting from the denial of rehearing en banc:
It has long been my practice not to write or join opinions on denials of rehearing en banc. See Indep. Ins. Agents of Am,., Inc. v. Clarke, 965 F.2d 1077, 1080 (D.C.Cir. 1992). I must now depart from that practice. According to affidavits of the Directors of the Central Intelligence Agency, the Federal Bureau of Investigation, and the National Security Agency and the Director of National Intelligence, the court’s ruling in these cases endangers national security. The cases deserve to be reheard and reexamined by the full court. I therefore dissent from the denial, by a vote of 5 to 5, of rehearing en banc. Here are the reasons.
The panel opinion denying rehearing asserts that the agencies just mentioned and the Department of Justice, including the Solicitor General, do not understand the original opinion. We think these executive departments understand full well what the panel ordered. The government must file, as the “record” in each detainee review case, vast reams of classified information to be shared presumptively with private defense counsel, regardless whether any of this information was ever presented to the Combatant Status Review Tribunal, whose decision is the subject of judicial review. That order is contrary to the rule and the statute governing the contents of the record in cases such as these, it violates the restrictions on our jurisdiction in the Detainee Treatment Act, and it risks serious security breaches for no good reason.
The Detainee Treatment Act does not specify what shall be in the record when we review Tribunal decisions. This is understandable because a separate statute governs “the contents of the record in all proceedings instituted in the courts of appeals to enjoin, set aside, suspend, modify, or otherwise review or enforce orders of administrative agencies, boards, commissions, and officers.” 28 U.S.C. § 2112(a). Subsection (b) of this statute, and Rule 16(a) of the Federal Rules of Appellate Procedure, which is based on it, make crystal clear that — contrary to the panel’s *394 opinions — the record does not include information never presented to the Combatant Status Review Tribunal.[1] Yet neither of the panel’s two opinions even mentions Rule 16(a) or § 2112(a).[2]
Chief Judge Ginsburg, in his opinion concurring in the denial of rehearing en banc, offers two explanations. The first is that several other provisions in Title 28— not applicable here — differentiate between an “executive agency” and a “military department.” Stmt, of Ginsburg, C.J., at 1294. While intended to show that a Combatant Status Review Tribunal is not an “agency” for the purposes of § 2112(b), it indicates the opposite. In Title 28, “ ‘agency’ includes any department, independent establishment, commission, administration, authority, board or bureau of the United States ... unless the context shows that such term was intended to be used in a more limited sense.” 28 U.S.C. §451. Chief Judge Ginsburg’s citations illustrate how Congress has limited “agency” in other contexts by using modifiers such as “executive” and “federal.” Section 2112(b) contains no such limit. A military department is a “department” under § 451, and thus an “agency” under § 2112(b). Therefore, § 2112(b) applies to a Combatant Status Review Tribunal, which certainly falls within the ambit of the broad definition of “agency” in Title 28. The framers of the Administrative Procedure Act concluded that military commissions would be covered as “agencies,” unless they were expressly excluded from the Act. 5 U.S.C. § 551(1)(F).[3]
The Chief Judge’s second explanation for disregarding § 2112(b) exposes still an *395 other problem with the panel’s reasoning. He writes that to follow § 2112(b)’s law governing the contents of the record “would be to preclude the court from discharging the review function assigned to it in the” Detainee Treatment Act. Stmt, of Ginsburg, C.J., at 1295. What exactly is this “review function”? Apparently the idea is that the court will look at how well the Recorder did his job in gathering “Government Information” and how well he culled it in presenting the information to the Tribunal as “Government Evidence.” [4] Id. at 1295-97.
Forget for the moment that the Detainee Treatment Act limits our jurisdiction to review of the THbunal’s status determination. DTA § 1005(e)(2)(C)(i). Ignore as well that under the controlling regulations it is the Tribunal, not the court, who supervises the Recorder. E-l § (C)(2). Even so the question remains — how does the court’s order requiring the government to assemble a record consisting of all “reasonably available” information bearing on the detainee’s status enable the court to determine whether the Recorder adequately performed his job in gathering information? This is an essential question and neither the panel nor Chief Judge Ginsburg has ever given a satisfactory answer to it.
Perhaps the panel envisioned our court examining the thousands of documents[5] making up the “record” on review and seeing how much of this information escaped the Recorder’s attention. But the government has pointed out the fallacy in that vision, which contemplates a comparative judgment. The Recorders, operating-before Congress passed the Detainee Treatment Act, did not save the information they obtained unless it became part of the permanent record when they presented it to the Tribunal. So even if this were a proper function for our court, it is impossible for us to determine whether any particular piece of information was obtained or was not obtained by any particular Recorder in any particular detainee’s case.
*396 The original panel opinion offered a different rationale than the one the Chief Judge now proposes. It was that the detainee’s counsel would need to see Government Information “to present an argument that the Recorder withheld exculpatory information.” Bismullah I, 501 F.3d at 185-86. But the panel’s remedy far outruns this rationale. Even if one accepted the exculpatory information rationale — which would require the court to disregard § 2112(b) and Rule 16(a) — this would at most lead to a conclusion that the record on review should consist only of the evidence before the Tribunal plus any exculpatory information the government has discovered. Yet the panel has required all information, exculpatory and incriminatory alike, bearing on the detainee’s status to be deposited with the court and presumptively made available to defense counsel.
Why? We can be sure that the assembled information cannot be used in our judicial review of the Tribunal’s status determination. And we can also be sure that its assembly and filing in this court, and potential sharing with private counsel, gives rise to a severe risk of a security breach. That is the position of the agencies charged with protecting the country against terrorist attacks, who warn that foreign intelligence services will cease cooperating with the United States if the panel opinion stands. Their concerns deserve the attention of the full court on rehearing en banc.
One final point. Judge Garland votes against en banc, not because he thinks the case unimportant, but because he believes it is more important to advance our decision-making in order to assist the Supreme Court. Stmt, of Garland, J., at 1298-99. We think that it is more important to decide the case correctly and that a correct decision would be of more assistance to the High Court.
For the foregoing reasons we dissent from the denial of rehearing en banc.
ADDENDUM

. The statute provides that the "record to be filed in the court of appeals ... shall consist of the order sought to be reviewed or enforced, the findings or report upon which it is based, and the pleadings, evidence, and proceedings before the agency, board, commission, or officer concerned...." 28 U.S.C. § 2112(b) (italics supplied). Rule 16(a) of the appellate rules states the same. The government's merits brief not only cited Rule 16 but also discussed why the record it filed was in compliance with the rule. Respondent Br. 54-55. That discussion sufficiently alerted the panel not only to the rule but also to the statute: the Advisory Committee Notes to Rule 16 state that "[sjubdivision (a) is based upon 28 U.S.C. § 2112(b).”

. The Department of Defense regulation directly on point provides that the "official record of the Tribunal’s decision” shall consist of: "(a) A statement of the time and place of the hearing, persons present, and their qualifications; (b) The Tribunal Decision Report cover sheet; (c) The classified and unclassified reports detailing the findings of fact upon which the Tribunal decision was based; (d) Copies of all documentary evidence presented to the Tribunal and summaries of all witness testimony. If classified material is part oí the evidence submitted or considered by the Tribunal, the report will be properly marked and handled in accordance with applicable security regulations; and (e) A dissenting member’s summary report, if any.” E-2 §§ (C)(10), (C)(8).

. The Attorney General's Manual refers to courts martial, military commissions, and other military authorities as "agencies of the United States,” Attorney General's Manual on the Administrative Procedure Act 10 (1947), and then explains that they have been "specifically exempted” from the APA in what is now 5 U.S.C. § 551(1 )(F), id. at 12.
Chief Judge Ginsburg argues that Combatant Status Review Tribunals are sui generis and for that reason are exempt from the requirements of the APA. We agree that the APA exempts Combatant Status Review Tribunals, but not because they are sui generis. Instead, the detention of enemy combatants, and the review processes related to them, are military "functions” the APA specifically exempts. The writer's opinion in Al Odah v. United States, 321 F.3d 1134, 1149 (D.C.Cir.2003), attached hereto as an addendum, explains why. In any event, Chief Judge Ginsburg's argument misses the point. Our review in this case is controlled not by the APA, but by 28 U.S.C. § 2112. The Chief Judge does not explain why the broad, unmodified term "agency” in § 2112 excludes a Combatant Status Review Tribunal.

. Under Defense Department regulations, “Government Information” is “reasonably available information in the possession of the U.S. Government bearing on the issue of whether the detainee meets the criteria to be designated as an enemy combatant.” E-l § (E)(3). “Government Evidence” is "such evidence in the Government Information as may be sufficient to support the detainee’s classification as an enemy combatant.” E-l § (H)(4).
The panel did not seem to appreciate the large difference between “information” and "evidence.” It stated that "whether the preponderance of the evidence supported the conclusion of the Tribunal, cannot be ascertained without consideration of all the Government Information.” Bismullah v. Gates, 503 F.3d at 140 (Bisimtllah II), citing Bismullah v. Gates, 501 F.3d 178, 186 (D.C.Cir.2007) (Bismullah I). That rationale could not hold and the Chief Judge seems to have abandoned it. In legal proceedings before courts and other adjudicative bodies, the classic definition of “evidence” is "any matter of fact which is furnished lo a legal tribunal otherwise than by reasoning, as the basis of inference in ascertaining some other matter of fact.” James B. Thayer, Presumptions and the Law of Evidence, 3 Harv.L.Rev. 141, 143 (1889). Moreover, the Detainee Treatment Act, in speaking of a preponderance of the evidence, refers to "the requirement” that the Tribunal's conclusion be so supported. DTA § 1005(e)(2)(C)(i). The reference is to Defense Department regulation E-l §(G)(11) dealing with the burden of proof. In context it is clear as a bell that the "evidence” in the regulation and in the Act means the evidence before the Tribunal, not some pile of information the Recorder decided not to present. The panel thus erred in saying that to determine whether there was enough evidence to support the Tribunal’s decision, the court had to look through information the Tribunal never saw.

. The government predicts that for each detainee, the record envisioned by the panel will consist of "hundreds of thousands!. 1 of documents.” Pet. for Rehearing 10.